Sherwood SLATE, Plaintiff,

v.

**Joseph N. NOLL, Individually and as Secretary of the State of Wisconsin Department of Industry, Labor and Human Relations, Defendant.**

No. 74–C–352.

United States District Court,
W. D. Wisconsin.

Aug. 6, 1979.

Daniel W. Hildebrand of Ross & Stevens, S. C., Madison, Wis., for plaintiff.

George B. Schwahn, Asst. Atty. Gen., State of Wisconsin, Bronson C. LaFollette, Atty. Gen., Madison, Wis., for defendant.

Before SWYGERT, Circuit Judge, DOYLE, Chief District Judge, and GORDON, District Judge.

JAMES E. DOYLE, Chief Judge.

This is an action for declaratory and injunctive relief relating to the plaintiff's compelled retirement from his employment as an attorney-hearing examiner for the Department of Industry, Labor and Human Relations of the State of Wisconsin (DILHR). Jurisdiction is present. 28 U.S.C. § 1343(3); 42 U.S.C. § 1983. Because plaintiff seeks to enjoin the enforcement and execution of §§ 41.11(1), 41.02(23), and 42.531 of the Wisconsin Statutes, with respect to the rule of compulsory retirement at age 65 embodied in those statutes, on the ground that this statutory provision violates the Fourteenth Amendment to the Constitution of the United States, a three-judge court has been convened pursuant to the provisions of 28 U.S.C. §§ 2281–2284, as they read at the time the action was commenced. The case has been tried on the merits. The court finds as fact those matters set forth hereinafter under the heading "Facts."

*Facts*

Plaintiff is a resident and citizen of the United States and of the State of Wisconsin, residing in Madison, Wisconsin. Defendant is the Secretary of DILHR, and is the successor to the officials earlier named as defendant (references herein to "the defendant" will include his predecessors).

Plaintiff is a lawyer licensed to practice in the State of Wisconsin. His date of birth is January 9, 1909. On or about September 21, 1964, plaintiff became an attorney-hearing examiner for the Wisconsin Industrial Commission, the predecessor of DILHR (references herein to DILHR will include its predecessor). His duties and responsibilities were hearing and determining cases involving disputed claims for unemployment compensation. Plaintiff successfully served a probationary period and became a qualified civil service employee of DILHR. Plaintiff continued to serve as such attorney-hearing examiner until about April 8, 1974.

Under Wisconsin Statutes and regulations adopted pursuant thereto, as a non-probationary classified civil service employee, plaintiff could not be separated from his employment nor could his employment be terminated without cause first having been established, except for the compulsory retirement provisions at issue in this case.

Prior to December 1, 1972, DILHR policy concerning retirement was that an employee age 65 and over could apply for and receive an extension of the retirement date through the end of the year in which he or she reached the age of 65 years.

In approximately August, 1972, plaintiff and other DILHR employees were informed that as of December 1, 1972, all employees would be compelled to retire at the ends of the quarters in which they would reach the

age of 65, and that no employment would be extended beyond this time. The stated reasons for this policy were "to enable the employe to plan ahead for retirement and to know a definite date without having to wonder whether or not he or she will be extended, to have a uniform policy throughout the department, to bring our policy into account with the statute and with other state agencies and to make an opportunity for advancement of others."

At all times from the beginning of his employment with DILHR to the present, plaintiff has been physically and mentally able to perform the duties of an attorney-hearing examiner with DILHR.

Between June 22, 1973 and August 2, 1974, plaintiff made written and oral requests to defendant for an extension of his retirement date and, after retirement was effected, for reinstatement. Pursuant to and acting under color of §§ 41.11(1), 41.-02(23), and 42.531, Wis.Stats., and administrative policies and regulations promulgated pursuant thereto, the defendant initially terminated plaintiff's employment and caused his compulsory retirement on or about April 8, 1974, and prior thereto and subsequent thereto rejected all of plaintiff's requests for extension of his employment and for reinstatement in his employment, on the ground that no exceptions could be made to the requirement of retirement at the end of the quarter in which the plaintiff became 65 years of age. In taking this action, defendant did not consider plaintiff's experience, training, and competence to remain in his employment beyond age 65, granted no hearing on the question, and considered no evidence other than his age.

After March 31, 1974, plaintiff sought employment as a hearing examiner or attorney with other agencies of the State of Wisconsin, including the Departments of Justice, Health and Social Services, and Regulation and Licensing. He also sought employment with the City of Madison. In each instance, employment was denied pursuant to Wisconsin statutes and state policies prohibiting hiring of persons whose age exceeds 65 years. As a result, he has been foreclosed from obtaining employment with the State of Wisconsin and municipalities under terms and conditions he formerly enjoyed.

Plaintiff also attempted to obtain employment from private firms and the federal government. He filed over 100 applications for employment in legal and other capacities. He has been unable to obtain any full-time employment since the date of his retirement. He has been able to obtain occasional temporary part-time work in isolated instances. These items have provided him with approximately $500 to $600 per year of gross income through 1977 and have consisted of giving lectures at the University of Wisconsin and handling an occasional legal matter or hearing. Since February of 1978, plaintiff has been analyzing contracts for a local business concern. He receives $4 per hour gross income and earns approximately $450 per month, depending upon the hours of work available.

Plaintiff's pension and social security income is less than one-third of the amount he was earning before retirement. Inflation has eroded the value of his pension. This reduction of income has adversely affected his standard of living and life style and has caused him considerable concern.

As a result of plaintiff's compelled retirement, he has been deprived of salary increases and of an increase in pension and life insurance which would have resulted from annual increases in pay and additional time on the job for DILHR. The salary of hearing examiners presently is approximately $22,000 per year. Had plaintiff continued as an employee through December, 1974, he would have received approximately an additional $29 per month pension for life.

People age physically and mentally at different rates. Some persons older than 65 years of age continue to be wholly competent to perform various tasks of employment, including those performed by attorney-hearing examiners for DILHR, and some persons who have not yet reached the age of 65 years have lost their competency to perform such tasks.

Compulsory retirement at a given age such as 65 adversely affects the health and well being of some persons but not others. Such adverse effects often include loss of self esteem, feelings of worthlessness, major depression reactions, and sometimes suicidal dispositions.

It is difficult for persons 65 years of age and older to obtain employment. Generally, persons who are retired and who have no employment or little employment suffer more severe economic hardship than those who have not retired.

With respect to retirement plans such as the Wisconsin Retirement Fund, it is necessary to establish a "normal retirement date," whether age 65 or some other age, in order to establish actuarial costs and benefits for the retirement system. However, within such a retirement plan, provision can be made for those who choose to retire prior to the normal retirement date and for those who choose not to retire until they have reached various ages beyond the normal retirement date. No significant administrative difficulty is involved in accommodating desires for retirement earlier or later than the normal retirement age.

## Opinion

That serious hardship, even physical and mental illness as well as financial deprivation, is directly caused in some cases by a compulsory retirement rule at a given age, and that such a compulsory retirement rule deprives the community of the significant resource of the services of wholly competent persons of a greater age are considerations which might be persuasive to a legislative body in deciding whether to elect a fixed age as the condition for compulsory retirement and, if so, whether to select a greater or a lesser age. Effective as of January, 1979, for example, Congress has been persuaded by such considerations to provide that 70 years is the earliest permissible age at which retirement by reason of age may be compelled in employment by state or local government. 92 Stat. 189. Also, on September 26, 1978, the Governor of the State of Wisconsin promulgated a policy directive that all employees designated as "general" for Wisconsin Retirement Fund purposes who were scheduled to retire involuntarily, by reason of age, prior to January 1, 1979, might continue to work, provided they were able to perform their job duties.

Nevertheless, discrimination engaged in by legislatures with respect to a particular age for compulsory retirement from public employment is presumed to comply with the Constitution of the United States, and the burden is upon the challenger to show that no legitimate state interest is at stake or, if a legitimate state interest is at stake, that the particular age discrimination chosen is not rationally related to furthering the legitimate state interest. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). Unless the challenger meets this burden, a legislative choice to impose upon older employees the negative consequences of compulsory retirement at a fixed age does not violate the equal protection clause of the Fourteenth Amendment. *Murgia*, at 316–317, 96 S.Ct. 2562; *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); *Trafelet v. Thompson*, 594 F.2d 623 (7th Cir. 1979).

In the course of this litigation, defendant has asserted that the following five state interests are at stake in the legislative decision to create and maintain a retirement plan and fund: (1) facilitating employers' planning for personnel needs in an orderly manner; (2) facilitating employees' planning for retirement based upon a specific date; (3) providing the opportunity for employment of younger workers; (4) providing an opportunity to correct past discrimination in public employment based upon sex and race; and (5) providing for orderly removal of older workers without hardship or prejudice. Each of these state interests is indeed at stake and each is legitimate. However, defendant's formulation appears to be a studied effort to avoid the critical issue. It is not a question whether a retirement plan and fund, in general, is a means rationally related to

furthering any or all of the five state interests articulated. It is a question, rather: (a) whether the inclusion in such a retirement plan and fund of a provision for compulsory retirement at a fixed age is a means rationally related to furthering any or all of the five state interests articulated; and (b) if so, whether the inclusion of age 65 as the fixed age is such a rationally related means.

In a certain rather abstract and pure sense of the word "rational," it could be said that the inclusion of any fixed age for compulsory retirement in a retirement plan and fund is a means rationally related to: (1) facilitating employers' planning for personnel needs in an orderly manner; (2) facilitating employees' planning for retirement based upon a specific date; (3) providing the opportunity for employment of younger workers; (4) providing an opportunity to correct past discrimination in public employment based upon sex and race; and (5) providing for orderly removal of older workers without the opportunity for administrative error in determining, case by case, whether one employee or another remains capable of performing his or her duties.[1] But in this sense of "rationality," any maximum age will do, whether it be 25 years of age, 30, 35, 65 or 85. Age 65 as a maximum has less to commend it as "rationally" related to state interest (3) and (4) than age 35, for example, and appears to have no more to commend it as "rationally" related to state interests (1), (2) and (5).

Possibly the meaning of the so-called rational relationship test in constitutional litigation is that because a compulsory-retirement-at-35 statute would be rational in the same sense that a compulsory-retirement-at-65 statute would be rational, neither would be vulnerable to constitutional challenge. More starkly, if the sole legitimate state interest at stake were its interest in facilitating state employers' planning for personnel needs in an orderly manner, for

example, and if compelling retirement at 35 years is rationally related to furthering that state interest, as it is, perhaps courts must refrain from setting aside the legislative decision, however unwise it might be to deprive the community of the services of all those over 35, however harsh it might be to deny to those over 35 the opportunity for public employment, however perilous it might be to reduce so sharply the factor of experience in the entire body of state employees. Language of the Supreme Court of the United States in *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171, strongly suggests that the limits upon judicial intervention may well be so radical.

However, it seems more probable that even the permissive test of rational relationship would not permit the courts to refrain in 1979 from invalidating a statute that requires retirement at age 35. This would be true because the constitutional inquiry cannot be so narrowly focused as to identify a single legitimate state interest and a single means and to examine the rationality of the relationship of one to the other, when, in a larger context, the entire measure is virtually universally perceived as wildly irrational and unjust. For the purpose of deciding the present case, therefore, we think it necessary to consider, first, whether there is at stake a state interest beyond the five so warily articulated by the defendant, and, if so, whether the choice of age 65 as a ceiling on public employment is rationally related to furthering such additional state interest.

Our inquiry is not to be limited to purposes articulated in the statute or even to those articulated by the defenders of the statute in the course of litigation. The test is "whether any state of facts may reasonably be conceived to justify the classification." *Trafelet v. Thompson, supra,* at 626.

---

1. State interest number (5), as articulated by defendant, is to provide for orderly removal of older workers "without hardship or prejudice." It is true that the provision of benefits to retired employees reduces the financial hardship, although by no means eliminating it, but the specific requirement of retirement at a given age cannot be said to be a means of eliminating or reducing hardship attendant upon retirement, nor can it be said to eliminate prejudice except in the sense in which the point has been restated in the text, above.

Clearly there is a legitimate state interest in achieving and maintaining a certain level of physical, mental and emotional competence among governmental employees. This interest is rationally served by various devices in the recruitment process. It is also rationally served by devices designed to remove those employees whose physical, mental and emotional competence becomes sufficiently impaired while in the state's employ, whether it is trauma, disease, the effects of aging, or other factors which cause the impairment.[2]

With respect to impairment as a consequence of aging, *Murgia* and *Vance v. Bradley* have established that the legislature may constitutionally choose the device of a universally fixed age for compulsory retirement, as opposed to a case-by-case examination of the competence of each employee, and that, at least within a reasonably narrow band of possible ages, it is wholly for the legislature to select the very age. Crudities implicit in the fixed-age device itself, in that some below the age may have become incompetent by reason of aging while some above it remain fully competent, and crudities implicit in the choice of age 65, for example, rather than 64 or 66, are constitutionally tolerable. See *Vance v. Bradley*, 440 U.S. at 105, 99 S.Ct. 948.

As our findings of fact reflect, plaintiff has made an impressive showing in this case that persons age physically and mentally at different rates, that some persons well beyond the age of 65 remain wholly competent to perform the tasks of public employees, and that some well short of that age have lost their competency to perform. But plaintiff has not succeeded in the essential, though perhaps impossible, task of showing that there is no significant discrepancy in the incidence of incompetence resulting from aging among those approximately 55 to 60 years of age as contrasted with those approximately 70 to 75 years of age. In the absence of such a showing, the legislative choice of an age between 60 and 70 must be accepted.

We appreciate that in *Murgia*, the compulsory retirement provision applied only to police officers; that in *Vance v. Bradley*, only to those covered by the Foreign Service retirement system; that in *Trafelet v. Thompson*, only to judges of the courts of a state; and that in each case reasons for the requirement were present which do not apply to as broad or as various a group of public employees as that covered by the Wisconsin statutes and regulations challenged here. However, the standard of scrutiny which the Supreme Court expressly chose in *Murgia* and *Vance v. Bradley*, and the rationale then employed in both cases, compel the same result in the present case.

The role of an attorney-hearing examiner is closely enough related to that of a judge of a state court to bring plaintiff's individual case within the scope of *Trafelet*. Assuming, although it seems a most dubious assumption, that plaintiff would enjoy standing to challenge the application of the maximum age rule to some activity in state employment in which no consequence would follow from age-related diminution in physical, mental or emotional competence, it is clearly plaintiff's burden to pinpoint the existence of such an activity within state employment. This burden has not been met.

In *Gault v. Garrison*, 569 F.2d 993 (7th Cir. 1977), the district court had dismissed the complaint on the ground that it failed to state a claim upon which relief could be granted. The court of appeals reversed the order of the district court (at 997): "Because plaintiff's complaint states a claim that her rights under the Fourteenth Amendment have been violated . . . ." The case was remanded for further proceedings consistent with the opinion of the court of appeals. In the present case, the plaintiff has responded to the opportunity to offer evidence at trial. However, given

---

**2.** No unfairness to this plaintiff results from our consideration of the state's interest in achieving a certain level of physical, mental and emotional competence among its employees. Although this interest has not been advanced in the defense of the case, plaintiff has devoted his principal attention to it in his factual showing and in his argument.

that opportunity, the plaintiff has failed to meet the burden of proving that the age discrimination embodied in the challenged statutes is not rationally related to furthering a legitimate state interest. Consequently, we hold that the plaintiff has failed to prove his case on the merits of the constitutional question.

Accordingly, upon the basis of the entire record herein, it is ordered that judgment be entered dismissing this action on its merits.

SWYGERT, Circuit Judge, dissenting.

Regrettably, I am compelled to dissent. *Murgia* and *Vance* are, in my opinion, pointedly distinguishable from the case before us and ought not control our decision. Both cases dealt with a distinct group of Government employees whose peculiar job requirements justified compulsory retirement at an age earlier than civil service workers generally. Here the Wisconsin statute makes no distinction among the state employees even though they may have positions in which age may or may not be a factor. It is an across-the-board statute. This, I believe, makes for a meaningful distinction; neither *Murgia* nor *Vance* addressed the question whether a compulsory retirement statute for all State employees who reach 65 years old can be rationally based.

The Wisconsin statute was enacted in its present basic form in 1947. It may well be that a rational basis serving legitimate state purposes could be constructed—in hindsight—for compulsory retirement at 65 years old in 1947. But this is 1979, and the world has moved ahead from 1947. For example, Congress amended the Federal Age Discrimination in Employment Act of 1967 in 1977, raising the ceiling for application of that statute's antidiscriminatory prohibitions from 65 to 70 years of age. *See* 29 U.S.C. §§ 621 *et seq.*[1] The Senate Report accompanying those amendments provides eloquent and persuasive evidence of the fact that a general compulsory retirement law at age 65 presently can serve no legitimate state purpose:

> The act's current age limitation unfairly assumes that age alone provides an accurate measure of an individual's ability to perform work. In fact, the evidence clearly establishes the continued productivity of workers who are 65 years of age and older. First, there were 2.7 million persons age 65 and older working in 1976. 1.6 million of them are 65 to 69 years of age and 1.1 million of them are age 70 and older. There are individuals who work into their eighties and even nineties. Second, there is substantial evidence that many workers can continue to work effectively beyond age 65 and may, in fact, be better employees because of experience and job commitment.

S. Rep. No. 493, 95th Cong., 1st Sess. 3 (1977).

The rational basis for a law may dissipate over time. That is the situation here. This is exemplified by the current practice of selectively exempting certain Wisconsin state employees from the requirement to retire at age 65.[2] Aside from its unequal treatment implications, this practice fatally undermines the hypothetical purposes (purposes which were never articulated by the Wisconsin legislature itself) advanced by the Attorney General for the statute.

I would hold that the Wisconsin statute violates the Fourteenth Amendment.

1. Federal employees covered by the Civil Service Retirement system have no mandatory retirement age. *See* Age Discrimination in Employment Act Amendments of 1978, Pub. L. No. 95–256, § 5(c), 92 Stat. 191.

2. The affidavit of John L. Zimbeck, Deputy Secretary of the Wisconsin Department of Employees Trust Funds, reads in part:
   There are some employees who do not retire until after the normal retirement age because their employment may be continued by the state agency that employs them. Attached hereto and marked Exhibit B are statistics which reflect the age of publicly employed persons participating in the Wisconsin Retirement Fund. As of March 13, 1978, 261 men and 219 women over age 65 were continued as public employees and as contributors to the Wisconsin Retirement Fund. A regular public employee who works beyond the age of 65 receives a pension increase for each year that he works beyond age 65.