Ruth S. LAMB, Plaintiff-Appellant,

v.

SCRIPPS COLLEGE, Defendant-Appellee.

Ruth S. LAMB, Plaintiff-Appellee,

v.

SCRIPPS COLLEGE, Defendant-Appellant.

Nos. 79–3250, 79–3305.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 6, 1980.

Decided Sept. 17, 1980.

Charles S. Vogel, Richard D. Fybel, Nossaman, Krueger & Marsh, Los Angeles, Cal., for Lamb.

Robert A. Siegel, O'Melveny & Myers, Los Angeles, Cal., for Scripps College.

Before SCHROEDER and FERGUSON, Circuit Judges, and MacBRIDE,* District Judge.

* The Honorable Thomas J. MacBride, Senior United States District Judge, Eastern District of California, sitting by designation.

1. As required under 28 U.S.C. § 2403(b), we have certified to the Attorney General of the State of California that this action presents a challenge to the constitutionality of a California statute.

FERGUSON, Circuit Judge:

This action challenges the constitutionality of a California statute which permits, without requiring, the compulsory retirement by private employers of tenured private college professors aged 65 to 69.[1] Plaintiff Ruth S. Lamb argues that the challenged statute violates the equal protection clause of the fourteenth amendment by distinguishing irrationally between tenured private college professors aged 65 to 69 and other employees, and between tenured private college professors aged 65 to 69 and those younger than 65 and older than 69. Lamb seeks reinstatement and monetary damages. We agree with the district court that the challenged provision satisfies the rational basis standard of equal protection review and therefore affirm the district court's dismissal of the action.

I.

When first enacted in 1972, California Labor Code § 1420.1(a) prohibited age-based employment discrimination against individuals between the ages of 40 and 64. Section 1420.1(a) was amended, effective January 1, 1978 ("the 1978 amendment") to extend protection to any individual "over the age of 40," thereby protecting, for the first time, individuals aged 65 and over.[2] The protections afforded employees over age 65 by the 1978 amendment were narrowed, effective January 1, 1979, by an amendment to § 1420.15 of the Labor Code ("the 1979 amendment") providing the following two exemptions:

Nothing in this section or Section 1420.1 shall be construed to prohibit compulsory retirement of *any employee who has attained 65 years of age but not 70 years of age*, and who is either:

2. Section 1420.1(a) of the California Labor Code stated in pertinent part as follows:

It is an unlawful employment practice for an employer to refuse to hire or employ, or to discharge, dismiss, reduce, suspend, or demote, any individual over the age of 40 on the ground of age, except in cases where the law compels or provides for such action.

(a) *Serving under a contract of unlimited tenure, or similar arrangement providing for unlimited tenure at an institution of higher education* as defined by Section 120(a) [sic] of the Federal Higher Education Act of 1965, or;

(b) For the two-year period immediately before retirement, is employed in a bona fide executive or a high policymaking position, if such employee is entitled to an immediate nonforfeitable annual retirement benefit from a pension, profitsharing, savings, or deferred compensation plan, or any combination of such plans, of the employer of such employee, which equals, in the aggregate, at least $27,000. (Emphasis added).

The 1978 and 1979 amendments to the California Labor Code parallel changes in the federal Age Discrimination Employment Act of 1967, 29 U.S.C. §§ 621–634 ("the ADEA"). Congress amended the ADEA in 1978, Act of Apr. 6, 1978, Pub.L. No. 95–256, § 3(a), 92 Stat. 189, *codified at* 29 U.S.C. § 631(c)(1), (d), to extend the upper ceiling for protection under federal law from age 64 to age 69, and to provide nearly identical exemptions from protection to those adopted in the 1979 California amendment:

Nothing in this chapter shall be construed to prohibit compulsory retirement of any employee who has attained 65 years of age but not 70 years of age, and who, for the 2-year period immediately before retirement, is employed in a bona fide executive or a high policymaking position, if such employee is entitled to an immediate nonforfeitable annual retirement benefit from a pension, profit-sharing, savings, or deferred compensation plan, or any combination of such plans, of the employer of such employee, which equals, in the aggregate, at least $27,000.

\* \* \* \* \* \*

Nothing in this chapter shall be construed to prohibit compulsory retirement of *any employee who has attained 65 years of age but not 70 years of age, and who is serving under a contract of unlimited tenure (or similar arrangement providing for unlimited tenure) at an institution of higher education* (as defined by section 1141(a) of Title 20). (Emphasis added.)

Despite similarities in language, two significant differences exist between the 1979 California amendment and the parallel federal provisions. First, because federal law never protected individuals over age 69, it excludes all tenured private college professors over age 65 from protection against age-based employment discrimination. California law, on the other hand, protects all employees over age 40; thus, tenured individuals are exempted from protection at ages 65 to 69, but are protected thereafter. Second, the federal tenured employee exemption, unlike the California exemption, will be automatically repealed as of July 1, 1982.

After the filing of plaintiff Lamb's opening brief, the California Legislature eliminated these discrepancies by amending Labor Code § 1420.15, effective January 1, 1980 ("the 1980 amendment"), to provide that (1) prior to July 1, 1982 all tenured professors aged 65 and over will be exempted from protection, and (2) subsequent to that date all tenured professors aged 70 and over will be exempted.[3] The 1980 amendment thereby eliminates the age 69 ceiling as well as the difference in treatment between professors aged 65 to 69 and those 70 and over that existed under the 1979 amendment. It also brings California law into conformity with federal law after July 1, 1982. At that time, private tenured col-

---

**3.** The text of the 1980 amendment states in pertinent part as follows:

Nothing in this section or Section 1420.1 shall be construed to prohibit compulsory retirement of the following:

(a) Prior to July 1, 1982, of any employee who has attained 65 years of age and is serving under a contract of unlimited tenure, or similar arrangement providing for unlimited tenure at an institution of higher education as defined by Section 1201(a) of the Federal Higher Education Act of 1965.

On and after July 1, 1982, this subdivision shall only apply to an employee who has attained 70 years of age.

lege professors will be protected, under both federal and California law, up to age 69 but not thereafter.

Plaintiff Lamb served Scripps College as a professor under a contract of unlimited tenure from 1958 until the conclusion of the 1977–78 academic year. Lamb celebrated her 65th birthday on April 19, 1978. At that time, the 1978 amendment to California Labor Code § 1420.1(a) made it unlawful for a private employer to retire any individual "over the age of 40" on the basis of age. This statute also required employers to permit an employee who indicated in writing a desire to continue working beyond the normal retirement date and who could demonstrate the ability to do so to continue employment.[4] Lamb's ability to continue working is not disputed. Despite written notices by Lamb as early as January 14, 1978 indicating her desire to continue employment beyond the age of 65, Scripps discharged her during the academic year ending June 30, 1978. By letter dated December 14, 1978, Scripps further notified Lamb that she was "retired" as of January 1, 1979 on the basis of the 1979 amendment to § 1420.15 which exempted tenured private college professors aged 65 to 69 from the protection against age-based employment discrimination provided for in the 1978 amendment.

After exhausting the administrative remedies afforded her by the State of California, Lamb filed this action. In proceedings before the district court, Scripps moved to dismiss for lack of jurisdiction over the subject matter and alternatively for failure to state a federal claim upon which relief could be granted. The district court dismissed Lamb's federal constitutional claim with prejudice on the ground that the challenged amendment satisfied the rational basis standard of equal protection review. The court also dismissed a pendent state law claim without prejudice.[5]

## II.

Scripps argues that because it is a private employer acting pursuant to a state statute that permits but does not require the conduct at issue, there is no state action for equal protection purposes. The district court found that there was sufficient state involvement to constitute state action, and Lamb argues in support of that conclusion. We do not reach the issue because even if we determined that there was state action, we would nonetheless find no equal protection violation.[6]

The proper standard for reviewing the statute at issue here is clearly set forth in the decisions of the Supreme Court in *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (per curiam), and *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979). The Court in *Murgia* rejected an equal protection challenge to a Massachusetts law requiring uniformed police to retire at age 50. Noting that the aged do not constitute a suspect classification, and that there is no fundamental right to public employment, 427 U.S. at 312–14, 96 S.Ct. at 2566–67, the Court concluded that the ra-

---

**4.** Section 1420.15 of the California Labor Code stated in pertinent part as follows:

> Every employer in this state, except a public agency, shall permit any employee who indicates in writing a desire in a reasonable time and can demonstrate the ability to do so, to continue his employment beyond the normal retirement date contained in any private pension or retirement plan.
>
> Such employment shall continue so long as the employee demonstrates his ability to perform the functions of the job adequately and the employer is satisfied with the quality of work performed.

**5.** In addition to her constitutional challenge, Lamb alleged that Scripps violated the 1978

amendment to § 1420.1 of the California Labor Code which extended protection, for the first time, to persons aged 65 and over. Scripps argued in response that its conduct was justified by a provision in the 1978 amendment granting an employer with an existing bona fide retirement program a two-year transition or grace period prior to enforcement.

**6.** Scripps originally filed a notice of cross-appeal challenging the district court's determination that there was sufficient state involvement to constitute state action for equal protection purposes. In its brief on appeal, however, Scripps indicates that it has chosen not to pursue the cross-appeal.

tional basis test was the proper standard of review. On the basis of testimony regarding the demands of the job and the relationship between age and ability to perform, the Court held that the rational basis test was satisfied because the challenged statute rationally furthered the state's goal of assuring the physical preparedness of its uniformed police. *Id.* at 314, 96 S.Ct. at 2567.

More recently, in *Vance v. Bradley, supra,* the Court rejected a claim that Congress violated the equal protection component of the due process clause of the fifth amendment by requiring Foreign Service employees to retire at age 60, while permitting Civil Service employees to continue working until age 70. Noting, as in *Murgia,* that the challenged statute involved neither a fundamental right nor a suspect classification, 440 U.S. at 96–97, 99 S.Ct. at 942–943, the Court determined that the statute was valid if it was " 'rationally related to furthering a legitimate state interest.' " *Id.* at 97, 99 S.Ct. at 943, *quoting Massachusetts Board of Retirement v. Murgia, supra,* 427 U.S. at 312, 96 S.Ct. at 2566. The Court then held that the challenged statute was valid because it was rationally related to furthering the goal of stimulating superior performance "by assuring that opportunities for promotion would be available despite limits on the number of personnel classes and on the number of positions in the Service." *Id.* 440 U.S. at 101, 99 S.Ct. at 945.

Lamb concedes that the challenged statute is valid if it satisfies the rational basis standard—i. e., if it is "rationally related to furthering a legitimate state interest."[7] In applying that standard, we note that scrutiny under the rational basis test

> employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. . . . Such action by a legislature is presumed to be valid.

*Massachusetts Board of Retirement v. Murgia, supra,* 427 U.S. at 314, 96 S.Ct. at 2567 (footnote omitted); *see Parham v. Hughes,* 441 U.S. 347, 351, 99 S.Ct. 1742, 1745, 60 L.Ed.2d 269 (1979); *Lockport v. Citizens for Community Action,* 430 U.S. 259, 272, 97 S.Ct. 1047, 1055, 51 L.Ed.2d 313 (1977). We are also mindful of the guidelines set forth in *Bradley* for application of the rational basis standard:

> [I]n cases [which do not involve either a suspect group or a fundamental interest], courts are quite reluctant to overturn governmental action on the ground that it denies equal protection of the laws. The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted. Thus, we will not overturn such a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.

*Vance v. Bradley, supra,* 440 U.S. at 97, 99 S.Ct. at 943 (footnotes omitted).

The question before us, then, is whether the exemption under California law of tenured private college professors aged 65 to 69 from protection against age-based discrimination in employment is rationally related to the furthering of a legitimate state interest. In considering that question, our job is not to assess the wisdom of legislative action, but only to decide whether the mandatory retirement policy at issue here denies plaintiff the protection guaranteed her under the equal protection clause of the fourteenth amendment.

### III.

Plaintiff Lamb urges us, in determining whether the challenged statute satisfies the

---

7. The fact that both *Murgia* and *Bradley* involved public employment, while the instant case involves private employment, does not make the standard set forth in those cases inapplicable here. *See Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970); *Schware v. Board of Bar Examiners,* 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957).

rational basis test, to reverse on the basis of *Gault v. Garrison,* 569 F.2d 993 (7th Cir. 1977), *cert. denied,* 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633 (1979). *Gault* is the one exception to a series of Supreme Court and court of appeals decisions rejecting equal protection challenges to mandatory retirement schemes. *See, e. g., Vance v. Bradley, supra; Massachusetts Board of Retirement v. Murgia, supra; Malmed v. Thornburgh,* Daily Lab. Rep. (BNA) (May 21, 1980) (3d Cir. 1980) (mandatory retirement for state judges at 70 is constitutional); *Martin v. Tamaki,* 607 F.2d 307 (9th Cir. 1979) (mandatory retirement for water and power department employee at age 65 is constitutional); *Trafelet v. Thompson,* 594 F.2d 623 (7th Cir.), *cert. denied,* 444 U.S. 906, 100 S.Ct. 219, 62 L.Ed.2d 142 (1979) (mandatory retirement for state judges at age 70 is constitutional); *Palmer v. Ticcione,* 576 F.2d 459 (2d Cir. 1978), *cert. denied,* 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633 (1979) (mandatory retirement for teachers at age 70 is constitutional); *Johnson v. Lefkowitz,* 566 F.2d 866 (2d Cir. 1977), *cert. denied,* 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633 (1979) (mandatory retirement for civil service employees at age 70 is constitutional); *Talbot v. Pyke,* 533 F.2d 331 (6th Cir. 1976) (mandatory retirement for park district employee at age 70 is constitutional); *Rubino v. Ghezzi,* 512 F.2d 431 (2d Cir.), *cert. denied,* 423 U.S. 891, 96 S.Ct. 187, 46 L.Ed.2d 122 (1975) (mandatory retirement for state judges at age 70 is constitutional).

In *Gault,* plaintiff, a tenured high school biology teacher, was retired at the age of 65 on the basis of both a state statute which ended tenure of public school teachers at age 65 and the written policy of the school board to retire teachers at age 65. Absent evidence of either an identified state purpose for the challenged policy,[8] or any relationship between the attainment of age 65

and fitness to teach, the Seventh Circuit determined that it could not, without further proceedings, justify the challenged provisions. Comparing the case before it with *Murgia,* in which the Court found no indication that mandatory retirement had "the effect of excluding from service so few officers who are in fact unqualified as to render age 50 a criterion wholly unrelated to the objective of the statute. . . .," *Massachusetts Board of Retirement v. Murgia, supra,* 427 U.S. at 316, 96 S.Ct. at 2568 (footnote omitted), the *Gault* court stated as follows:

> Unlike the Court in *Murgia,* we cannot say that the provisions in the instant case would eliminate any more unfit teachers . . . than a provision to fire all teachers whose hair turns gray.

*Gault v. Garrison, supra,* 569 F.2d at 996. Accordingly, the court remanded the case for trial to determine whether compulsory retirement of teachers at age 65 is rationally based.

We decline to follow *Gault* for two reasons. First, the court there assumed that the burden of proving a rational relationship between the statute and a legitimate legislative goal rests on the party defending the statute. *Vance v. Bradley* soundly rejects this approach:

> In ordinary civil litigation, the question frequently is which party has shown that a disputed historical fact is more likely than not to be true. In an equal protection case of this type, however, *those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.* As we have said in a slightly different context:
>
> > "The District Court's responsibility for making 'findings of fact' certainly does not authorize it to resolve conflicts in

---

**8.** Because *Gault* was dismissed shortly after the filing of the complaint, no evidence was presented and no affidavits were filed. As a result, the state never specifically identified what it considered to be the legitimate state interest furthered by the challenged provision.

The *Gault* court notes that the government's briefs "only hint that the purpose may be to remove unfit teachers." *Gault v. Garrison, supra,* 569 F.2d at 996. The irrelevance of the state's failure to specifically identify its purpose is discussed in footnote 8 below.

the evidence against the legislature's conclusion or even to reject the legislative judgment on the basis that without convincing statistics in the record to support it, the legislative viewpoint constitutes nothing more than what the District Court in this case said was 'pure speculation.' "

*Vance v. Bradley, supra,* 440 U.S. at 110–11, 99 S.Ct. at 950 (citations omitted) (emphasis added), *quoting Brotherhood of Locomotive Firemen & Enginemen v. Chicago, R.I. & P.R.R.,* 393 U.S. 129, 138–39, 89 S.Ct. 323, 327–28, 21 L.Ed.2d 289 (1968); *see Malmed v. Thornburgh, supra,* Daily Lab. Rep. at D–4 (reversing district court on ground that it erroneously placed burden of proving a rational relationship on party defending the statute).

■ Under *Bradley,* the burden is not on Scripps, as Lamb argues, to prove that the judgment of the legislature was rationally based. Rather, the burden is on Lamb to establish that the California Legislature could not reasonably have conceived the facts on which the challenged provision was based to be true. As we discuss below, we conclude that Lamb did not satisfy that burden here.

■ Second, we agree with the Second Circuit that *Gault* "too narrowly conceives the possible rational bases for a compulsory retirement statute." *Palmer v. Ticcione, supra,* 576 F.2d at 462. The court in *Gault*[9] assumed that the purpose behind the mandatory retirement policy was the removal of unfit teachers. It further assumed that, if the mandatory retirement policy could not be justified as a means of furthering that goal because of the absence of any correlation between advancing age and fitness to teach, it was not rationally based. If, however, the state's interest is not limited to the removal of unfit professors, but extends to maintaining and promoting faculty excellence,[10] *see Klain v. Pennsylvania State University,* 434 F.Supp. 571, 575 (M.D. Pa. 1977), *aff'd mem,* 577 F.2d 726 (3d Cir. 1978), there are numerous ways—totally unrelated to physical or mental preparedness—in which that interest may be rationally furthered by a mandatory retirement policy.

■ The California Legislature could have reasonably concluded that the challenged policy would open up employment opportunities for younger professors and for minorities, *see Palmer v. Ticcione, supra,* 576 F.2d at 462, bring in younger faculty with fresh ideas and techniques, *see id.; Klain v. Pennsylvania State University, supra,* 434 F.Supp. at 575; *see also Martin v.*

---

**9.** The court in *Gault* assumed, erroneously, that it could properly consider only those legislative purposes articulated by the state at the time the statute was enacted. In making this assumption, the court relied on the statement in *Massachusetts Board of Retirement v. Murgia, supra,* 427 U.S. at 314, 96 S.Ct. at 2567, that "the State's classification rationally furthers the purpose identified by the State. . . ." This statement does not say, and cannot mean, that no other purposes could have been considered. *See Trafelet v. Thompson, supra,* 594 F.2d at 626 & n.5. In light of language in *Vance v. Bradley, supra,* 440 U.S. at 110–11, 99 S.Ct. at 950, indicating that a statute is rationally based if any set of facts may reasonably be conceived to justify the classification, *see McGinnis v. Royster,* 410 U.S. 263, 274, 93 S.Ct. 1055, 1061, 35 L.Ed.2d 282 (1973); *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78–79, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911), we are persuaded that courts may properly look beyond the articulated state interest at the time of enactment in testing a statute under the rational basis test. *See Martin v. Tamaki, su-*

*pra,* 607 F.2d at 310 n.4; *Palmer v. Ticcione, supra,* 576 F.2d at 462–63.

The language in *Bradley* confirms the Court's prior determination that for purposes of determining whether a provision rationally furthers a legitimate state interest "it is, of course, constitutionally irrelevant whether this reasoning in fact underlay the legislative decision . . ." *Flemming v. Nestor,* 363 U.S. 603, 612, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960). It also supports the conclusion that a court "may even hypothesize the motivations of the state legislature to find a legitimate objective promoted by the provision under attack." *Malmed v. Thornburgh, supra,* Daily Lab. Rep. at D–2; *see Weinberger v. Salfi,* 422 U.S. 749, 780, 95 S.Ct. 2457, 2474, 45 L.Ed.2d 522 (1975); *Williamson v. Lee Optical, Inc.,* 348 U.S. 483, 487–90, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955).

**10.** Because the 1979 amendment was enacted without recorded debate, there is no legislative history identifying the state's purpose at the time of enactment.

*Tamaki, supra,* 607 F.2d at 310, stimulate performance among younger faculty members by assuring a predictable number of available positions, *see Klain v. Pennsylvania State University, supra,* 434 F.Supp. at 575; *see also Martin v. Tamaki, supra,* 607 F.2d at 310, allow universities to plan in advance for staffing needs, *see Klain v. Pennsylvania State University, supra,* 434 F.Supp. at 575, 576, and avoid the difficulties inherent in evaluating the individual performances of professors aged 65 and over, *see, id.* at 575; *see also Malmed v. Thornburgh, supra,* Daily Lab. Rep. at D–2; *Trafelet v. Thompson, supra,* 594 F.2d at 628.

The legislative history to the federal provisions in the ADEA which parallel the California provisions challenged here mentions the following rationales for the federal exemption for tenured private college professors: the opening of positions for younger professors and minorities; relieving the financial burden caused by the retention of highly paid senior employees; and avoiding the difficulty of assessing individual performances for purposes of good cause discharges. S.Rep. No. 95–493, 95th Cong., 2d Sess. 8–9 (1978), *reprinted in* [1978] U.S. Code Cong. & Admin. News, pp. 504, 511–12.

Lamb argues that because California law, unlike federal law, had the effect of exempting tenured private college professors aged 65 to 69, while protecting professors aged 70 and over, the rationales set forth in the legislative history to the ADEA amendments are inapplicable as rationales for the California exemption. Lamb also contends that this peculiarity of California law renders the entire California exemption unconstitutional. We disagree with Lamb on both counts.

With respect to the first, we point out that notwithstanding the difference in age ceiling between California and federal law, both exempt at least the class of tenured private college professors aged 65 to 69 from protection against age-based employment discrimination. The fact that a smaller class of tenured private college professors can be mandatorily retired under California law than under federal law does not mean that the rationales behind the federal exemption of tenured private college professors aged 65 to 69 do not apply to the California exemption for that same class of persons.

Lamb's argument that the ceiling at age 69 creates a distinction that is so irrational that it renders the entire exemption unconstitutional also fails. The rationales for permitting private universities to mandatorily retire tenured professors aged 65 to 69 would appear to apply with equal force to tenured professors aged 70 and over. Nonetheless, the underinclusiveness of a particular provision, or its failure to fully remedy a certain problem, does not make the provision unconstitutional. A provision "does not offend the Constitution simply because the classification 'is not made with mathematical nicety . . . .'" *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970), *quoting Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911). Nor is it unconstitutional because it only "'partially ameliorate[s] a perceived evil . . . deferring complete elimination of the evil to future regulations.'"[11] *Trafelet v. Thompson, supra,* 594 F.2d at 631, *quoting City of New Orleans v. Dukes,* 427 U.S. 297, 303–05, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976). The Supreme Court's recent statement in *Bradley, supra,* is equally applicable here:

> Even if the classification involved here is to some extent . . . underinclusive . . . , and hence the line drawn by Congress imperfect, it is nevertheless the rule that in a case like this "perfection is by no means required."

*Vance v. Bradley, supra,* 440 U.S. at 108, 99 S.Ct. at 948, *quoting Phillips Chemical Co.*

---

11. As noted above, the 1980 amendment to § 1420.15 has eliminated both the age 69 ceiling and the discrepancy in treatment between professors aged 65 to 69 and those aged 70 and over. We decline Lamb's request that we rule on the lawfulness of this amendment. That statute was not challenged below and is not properly before this court on appeal.

*v. Dumas Independent School Dist.*, 361 U.S. 376, 385, 80 S.Ct. 474, 480, 4 L.Ed.2d 384 (1960); *accord, San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 51, 93 S.Ct. 1278, 1305, 36 L.Ed.2d 16 (1973).

## IV.

In light of the unique problems encountered by universities in their efforts to prevent intellectual stagnation and to assure diversity and competence in their faculties, *see* 123 Cong.Rec. S17288. S17290–91 (daily ed. Oct. 19, 1977) (remarks of Senators Williams and Moynihan), and the likelihood that a mandatory retirement policy will remedy at least some of these problems,[12] California's determination that different treatment is warranted for a certain class of tenured private college professors than for other tenured private college professors and other employees is rationally based. *See Vance v. Bradley, supra,* 440 U.S. at 102, 99 S.Ct. at 945; *Trafelet v. Thompson, supra,* 594 F.2d at 627. In rejecting Lamb's equal protection challenge on that basis, we make no endorsement of mandatory retirement as a matter of social policy. We are aware of both the debilitating effect that compulsory retirement can have on an individual, and the potential loss to society in terms of human resources that may result therefrom. The promulgation of a mandatory retirement policy, however, reflects a legislature's resolution of competing interests and this is "precisely the type of clash of competing social goals that is best resolved by the legislative process. The federal courts should not second guess the wisdom or propriety of such legislative resolutions as long as they are rationally based." *Palmer v. Ticcione, supra,* 576 F.2d at 464–65; *accord, Martin v. Tamaki, supra,* 607 F.2d at 311.

For the foregoing reasons the judgment of the district court is AFFIRMED.

---

**12.** The existence of alternative ways to resolve these problems does not render the mandatory retirement policy at issue here unconstitutional. As the Court stated in *Bradley,* "[w]hether we . . . think [the legislature] was unwise in not choosing a means more precisely related to its primary purpose is irrelevant." *Vance v. Bradley, supra,* 440 U.S. at 109, 99 S.Ct. at 949; *citing Califano v. Jobst,* 434 U.S. 47, 56–58, 98 S.Ct. 95, 100–101, 54 L.Ed.2d 228 (1977); *City of New Orleans v. Dukes, supra,* 427 U.S. at 303, 96 S.Ct. at 2516; *see Massachusetts Board of Retirement v. Murgia, supra,* 427 U.S. at 316, 96 S.Ct. at 2568; *Trafelet v. Thompson, supra,* 594 F.2d at 628; *Klain v. Pennsylvania State University, supra,* 434 F.Supp. at 579.