**SMALL LANDOWNERS OF OAHU,
a Hawaii nonprofit corporation,
Plaintiff,**

v.

**CITY AND COUNTY OF HONOLULU,
a Hawaii municipal corporation,
Defendant.**

Civ. No. 92–00372 HMF.

United States District Court,
D. Hawaii.

Sept. 16, 1993.

---

⇔17

James K. Mee, Wayne P. Nasser, Ashford & Wriston, Honolulu, HI, for plaintiff.

Ronald B. Mun, Corp. Counsel, Thomas P. Rack, Deputy Corp. Counsel, Honolulu, HI, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

FONG, District Judge.

### INTRODUCTION

On August 30, 1993, the court heard oral argument on cross motions for summary judgment filed by Plaintiff Small Landowners of Oahu ("Small Landowners") and Defendant City and County of Honolulu (the "City").

The subject of this lawsuit is the constitutionality of Ordinance 91–95, a condominium lease-to-fee ordinance similar to the single family residence lease-to-fee statute upheld by the United States Supreme Court in *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984).

In a case brought by the Bishop Estate, Judge David Ezra of this court had previously held that Ordinance 91–95 was constitutional under both the United States and Hawaii constitutions. *Richardson, et al., v. City and County of Honolulu (Richardson II)*, 802 F.Supp. 326 (D.Haw.1992), Exh. A to the City's Motion. Before a ruling on the summary judgment motions, Small Landowners unsuccessfully attempted to intervene in that case. *Richardson II*, Order of July 6, 1992, Exh. C to City's Motion.

## BACKGROUND

Ordinance 91–95 was enacted on December 8, 1991.

In *Richardson II*, the court explained the operation of Ordinance 91–95 as follows:

Ordinance 91–95 involves a mechanism for the transfer of the fee simple interest of leasehold property from condominium lessors to condominium lessees in Honolulu. In the "Findings and Purpose" section of Ordinance 91–95, the City found that there are approximately 16,000–17,000 residential condominium, cooperative and planned development units on leased land on Oahu.[1] Ord. 91–95 § 1. The City further found that the owners of such leased land had generally refused to sell proportionate shares in the land underlying such units. *Id.* As a result of this practice, the City determined that there exists "a serious shortage of fee simple residential condominium land, cooperative housing unit land and planned development land and [ ] an artificial inflation of the value of such land on Oahu." *Id.*

Accordingly, the City concluded that owners of condominiums on leased land should be able to acquire the proportionate share of leased land underlying their units at a fair and reasonable price. *Id.* In order to accomplish this objective, the City decided to use its eminent domain power to condemn the fee simple title to the land underlying condominiums, pay just compensation to the lessors/owners of such land, and sell the land to the condominium owners. *Id.*

The City Department of Housing and Community Development ("Department") is charged with administering, enacting appropriate rules, and enforcing Ordinance 91–95. Ord. 91–95 §§ 1.7, 1.8. Article 2 of Ordinance 91–95 governs the condemnation of condominium development leaseholds.[2] The condemnation procedures are triggered once at least twenty-five of the condominium owners within the development or the owners of 50% of the condominium units, whichever is less, apply to the Department to purchase the leased fee interest. *Id.* § 2.2(a)(1). After such an application, the Department must publish notice and hold a public hearing to determine whether the acquisition of the leased fee interest will effectuate the public purposes of the ordinance. *Id.* § 2.2(a)(2).

Within twelve months after the Department has designated a condominium development, or portion thereof, for acquisition, the Department must institute eminent domain proceedings unless the parties voluntarily agree to a sale of the property. Ord. 91–95 § 5.2. The compensation to be paid for the acquired property shall be the fair market value of the leased fee interest determined as of the date of the summons of the complaint in the eminent domain proceeding. *Id.* § 5.3.

After the City has acquired the subject land, authorized condominium lessees must

1. For the sake of simplicity, the court will refer to all condominium apartments, cooperative housing units, and planned development units covered by Ordinance 91–95 as "condominiums," unless otherwise indicated. While the court recognizes the legal distinctions between these forms of apartment ownership, such distinctions are not relevant to the issues at hand.

2. Articles 3 and 4 contain similar provisions relating to cooperative housing development leaseholds and residential planned development leaseholds, respectively.

purchase the underlying land within sixty days of acquisition. *Id.* § 2.3. In order to be eligible to buy the leased land, a purchaser must satisfy a list of seven requirements. *Id.* § 2.4.

*Richardson II* Summary Judgment Order at 29–32, City's Exh. C.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). The movant need not advance affidavits or similar materials to negate the existence of an issue on which the opposing party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553.

If the moving party meets its burden, then the opposing party must come forward with "specific facts showing that there is a genuine issue for trial" in order to defeat the motion. Fed.R.Civ.P. 56(e); *T.W. Elec.,* 809 F.2d at 630. The opposing party cannot stand on the pleadings nor simply assert that it will discredit the movant's evidence at trial. *Id.* "If the factual context makes the [opposing] party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Cal. Arch. Bldg. Prods. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

The standard for summary judgment reflects the standard governing a directed verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)). When there is a genuine issue of material fact, "the judge must assume the truth of the evidence set forth by the [opposing] party with respect to that fact." *T.W. Elec.,* 809 F.2d at 631. Inferences from the facts must be drawn in the light most favorable to the non-moving party. *Id.*

## DISCUSSION

### I. Preclusive Effect of Richardson II

The City argues that the decision in *Richardson II* precludes Small Landowners from relitigating the constitutionality of Ordinance 91–95. The City advances res judicata (claim preclusion), collateral estoppel (issue preclusion), and judicial estoppel as the sources of the preclusion.

■ Res judicata or claim preclusion provides that a final judgment, "when rendered on the merits, is an absolute bar to a subsequent action between the same parties or those in privity with them, upon the same claim or demand." 1B *Moore's Federal Practice* ¶ 0.405[1] at p. III–4.

The City concedes that Small Landowners was not a party to the earlier suit, but argues that Small Landowners was in privity with the plaintiffs in *Richardson II.* "Privity" is more a conclusion based on the individual facts than a rigorous test. 18 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 4449 (1981). The predominant factor in determining privity is the connection between the two parties. *Id.* While both the *Richardson II* plaintiffs and Small Landowners are owners of condominiums affected by the statute, there is no other link shown. Thus, they are not in privity. Res judicata does not preclude Small Landowners.

■ The City argues in the alternative that collateral estoppel or issue preclusion bars relitigation of the issues decided in *Richardson II.* The doctrine of nonmutual collateral estoppel sometimes gives preclusive effect to earlier judgments obtained in litigation against others. *See Blonder–Tongue Laboratories, Inc. v. University of*

*Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Green v. Ancora–Citronelle Corp.,* 577 F.2d 1380, 1384 & n. 2 (9th Cir.1978). The most important limitation on nonmutual preclusion is that the party precluded had a "full and fair opportunity to litigate in the prior action." 18 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 4465 (1981).

Small Landowners did not have a full and fair opportunity to litigate in *Richardson II.* It would be unfair to bind them to a result that they were denied an opportunity to influence through their own arguments. Furthermore, if the City wanted to bind Small Landowners by the decision in *Richardson II,* it could have and should have joined Small Landowners as a party to that litigation. *Martin v. Wilks,* 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989). Thus, Small Landowners is not collaterally estopped by *Richardson II.*

Finally, the City argues that principles of "judicial estoppel" preclude Small Landowners from relitigating the constitutionality of Ordinance 91–95.

■ Judicial estoppel does not apply here. The doctrine of judicial estoppel prevents a party from asserting a position that is inconsistent with an earlier position taken in the litigation. *Yanez v. United States,* 989 F.2d 323 (9th Cir.1993). Here, Small Landowners has not asserted any inconsistent earlier positions.

II. *Constitutional Challenges to Ordinance 91–95*

Both sides have moved for summary judgment on Small Landowners' claims that Ordinance 91–95 effects an impermissible taking, that it violates substantive due process, and that it violates the Equal Protection Clause.

A. *Takings Clause (Count I, VII, XIV)*

■ Count VII of the complaint alleges that Ordinance 91–95 effects an impermissible taking in violation of the Fifth Amendment to the United States Constitution. Count XIV alleges a violation of the Takings Clause of the Hawaii State Constitution.

Count I alleges that the taking was a deprivation of constitutional rights actionable under 42 U.S.C. § 1983.

The Takings Clause of the Fifth Amendment to the United States Constitution states that "private property [shall not] be taken for public use, without just compensation." The Takings Clause applies to the states through the Fourteenth Amendment. *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 244 n. 7, 104 S.Ct. 2321, 2331 n. 7, 81 L.Ed.2d 186 (1984). Moreover, a state may delegate its power to condemn to a municipality. Cf. *Jacobson v. Tahoe Regional Planning Agency,* 566 F.2d 1353 (9th Cir. 1977), *aff'd in part and rev'd in part on other grounds,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979).

In *Midkiff,* the United States Supreme Court upheld Hawaii's Land Reform Act of 1967. That statute provided for condemnation of the fee simple interest of the land under leasehold single family residences. The Hawaii legislature had passed the Land Reform Act in an effort to correct a land oligopoly.

The Supreme Court found that the Land Reform Act's approach to correcting the land oligopoly problem was not irrational. *Id.* The Court elaborated:

> [The Land Reform Act,] like any other, may not be successful in achieving its intended goals. But "whether *in fact* the provision will accomplish its objectives is not the question: the [constitutional requirement] is satisfied if ... the ... [state] Legislature *rationally could have believed* that the [Act] would promote its objective." When the legislature's purpose is legitimate and its means are not irrational, our cases make clear that empirical debates over the wisdom of takings—no less than debates over the wisdom of other kinds of socioeconomic legislation—are not to be carried out in the federal courts. Redistribution of fees simple to correct deficiencies in the market determined by the state legislature to be attributable to land oligopoly is a rational exercise of the eminent domain power. Therefore, the

Hawaii statute must pass the scrutiny of the Public Use Clause.

467 U.S. at 242–43, 104 S.Ct. at 2330.

The Takings Clause analysis under the Hawaii Constitution is similar. Article I, section 20 of the Hawaii Constitution reads, "[p]rivate property shall not be taken or damaged for public use without just compensation." In *Hawaii Housing Authority v. Lyman*, 68 Haw. 55, 704 P.2d 888 (1985), the Hawaii Supreme Court adopted a very deferential position similar to that in *Midkiff*:

> We therefore hold that once the legislature has spoken on the social issue involved, so long as the exercise of the eminent domain power is rationally related to the objective sought, the legislative public use declaration should be upheld unless it is palpably without reasonable foundation. The crucial inquiry is whether the legislature might reasonably consider the use public, and whether it rationally could have believed that application of the sovereign's condemnation powers would accomplish the public use goal.

*Id.* at 70–71, 704 P.2d 888.

The court now turns to the specific arguments advanced by Small Landowners.

### 1. *The City Council's Findings*

█ Small Landowners first argues that the City Council's findings are unsupported by the record. Specifically, Small Landowners asserts that there is no oligopoly in condominium ownership, that there is no shortage of fee simple condominiums, and that many lessees are financially better off than lessors.

Small Landowners has a difficult burden in attacking the City Council's findings of fact. The court must give great deference to a legislative body's factual findings. A party challenging a factual finding made by a legislative body must show that "the legislative facts [relied upon] could not reasonably be conceived to be true by the governmental decisionmaker." *Vance v. Bradley*, 440 U.S. 93, 110–11, 99 S.Ct. 939, 949–50, 59 L.Ed.2d 171 (1979); *Lamb v. Scripps College*, 627 F.2d 1015 (9th Cir.1980).

Small Landowners suggests that the court should not defer to the factual findings of the City Council because it is a municipality rather than a state legislature. Although Small Landowners correctly notes that municipalities and states are treated differently in the Eleventh Amendment immunity context, Small Landowners does not cite any case authority supporting its suggested distinction in this area.

The distinction is unwarranted because the deference given to legislative findings reflects a concern with the separation of powers between the legislature and the judiciary. It is as offensive to disturb the findings of city legislators as it is to disturb the findings of state legislators.

Moreover, despite the law review articles cited by Small Landowners, property owners are not "discrete and insular minorities" who deserve special judicial protection because they lack access to the political system. *United States v. Carolene Products Co.*, 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). The absurdity of this suggestion is shown by the fact that the Bishop Estate is one of the institutions challenging this statute. The power of the Bishop Estate in Hawaii belies any claim that it lacks access to the political system.

Small Landowners suggests that the Supreme Court's decision in *Lucas v. South Carolina Coastal Council* signals reduced deference to legislative findings. —— U.S. ——, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). The *Lucas* Court rejected the South Carolina legislature's finding that construction on plaintiff's beach front property could be curtailed because it threatened serious public harm. In order to avoid compensating plaintiff for a regulatory taking, the Court held, the legislature would need to find that common law principles such as nuisance allowed the prohibition of the construction. *Id.* —— U.S. at —— ——, 112 S.Ct. at 2901–02.

*Lucas* does not mean that all legislative findings are suspect. Rather, it is distinguishable because the South Carolina legislature had a vested interest in finding that the plaintiff's use of his property caused harm. If the legislature determined that the use was harmful, it could restrict that use with-

out paying compensation to the plaintiff. Thus, the legislature's finding of harm was inherently suspect. There is no reason to extend this heightened scrutiny to physical Takings cases in which the legislature has already committed itself to paying compensation.

Thus, the court will give great deference to the City Council's findings. The City Council need not consider the best evidence. Rather, it must simply have some evidence that could convince a rational legislator of the truth of the findings.

Applying this standard, the court finds adequate support for the City Council's findings.[3] For example, the City Council found that the leasehold condominium system allowed lessors to renegotiate large lease rent increases. This is supported by the statements of many persons who testified before the City Council.[4] Similarly, the testimony supported the City Council's findings that some lessees could not buy the fee simple interest without a mandatory conversion program,[5] and that lessees were forced to surrender their improvements on the land.[6]

Small Landowners most vigorously attacks the City Council's finding that land ownership is concentrated in the hands of owners who have refused to sell their fee simple interests. Citing statistics, Small Landowners argues that the fee simple interests are spread among many owners and that there is no concentration of ownership.[7] Thus, Small Landowners contends, there is no oligopoly that would support the passage of the ordinance as in *Midkiff*.

Small Landowners' argument is fruitless. First, the City Council's finding is not that there is an oligopoly, but rather that ownership is concentrated among landowners who have refused to sell. That finding almost proves itself because landowners who have agreed to sell are no longer owners. Moreover, the fact that landowners have refused to sell is supported by the statements cited above. Thus, the City Council's finding has adequate support.

Second, even if the finding was unsupported, it would not invalidate the ordinance. The City Council made several adequately supported findings upon which it could rationally decide to exercise its eminent domain power. Small Landowners has not succeeded in invalidating those findings.

### 2. The Use of Mandatory Conversion

Small Landowners argues that even if the findings are accepted, the mandatory conversion is irrational because it cannot correct these problems. Small Landowners supports its argument by noting that single-family residence prices rose after the mandatory conversion program went into effect. Thus, Small Landowners suggests, a rational legislator could not believe that condominium prices would fall.

The City Council's choice need not be a wise one, it must merely be rational. Ordinance 91–95 passes this minimal test. Transferring the fee simple title to the lessees will end the problem of gouging lessees on lease rent negotiations. The ordinance will force sales by unwilling lessors. Furthermore, it will allow lessees to keep the value of their improvements on the land. The means chosen by the City Council is a rational one.

3. The court does not need to examine every finding. The findings that are supported provide an adequate basis for the Council to have passed the ordinance.

4. *See, e.g.,* statements of Theresa Miyamoto, CX00019; Helen Higgins, ("I live at the Sandalwood, the apartment that was raised from affordable living to unaffordable right now.") CX00020; Darvin Haupert (lease rent increased by 8000 percent), CX00026–27; Knud Lindgard, CS00220; Richard Rosen, CX00252. All numbers refer to Bate stamp numbers given in Small Landowners' Exhibit 1.

5. *See* Small Landowners Exhibit 1, testimony of Steve Holmes, CX00251; Edward Jurkens, CX00285; Jerome Manis, CX00283.

6. *See,* Small Landowners Exhibit 1, Knud Lindgard, CX00220; Darvin Haupert, CX00215.

7. *See* Ezra, O'Connor, Moon & Tam Report, Exhibit 4 to Small Landowners' Motion, at 47 (415 of 466 landowners (89%) own land under only one condominium project).

### 3. Public Use Without Public Funds

Small Landowners further argues that there is no taking "for public use" because private funds are used in the conversion.

This argument was flatly rejected in *Midkiff*. There, the Supreme Court upheld the legislature's finding of public use despite the fact that private funds were used to buy the fee simple interests. *Midkiff*, 467 U.S. at 241, 104 S.Ct. at 2329. The question is not the source of the funds, but rather whether the legislature rationally believed that the taking served a public purpose. *Id.*

The City Council reasonably believed that its eminent domain could solve the numerous problems that it found to have been caused by the condominium lease system. Thus, its decision to exercise its power comports with the constitution.

### 4. Taking of a Cotenancy

Small Landowners argues that the City may not condemn only a portion of the land, leaving the building's owner in a forced cotenancy with the former lessees. Small Landowners cites the following sentence from *Hendler v. United States*, 952 F.2d 1364, 1374 (Fed.Cir.1991): "The Government does not have the right to declare itself a co-tenant-in-possession with a property owner."

The citation is taken completely out of context, and does not affect the result here. In *Hendler*, the district court had held that no taking occurred when the statute allowed EPA inspectors to enter the land and conduct monitoring. The appellate court reversed, holding that the government's entry onto land was a taking of the right to sole possession, and was therefore compensable. *Id.* at 1374. The *Hendler* court did not hold, as Small Landowners suggests, that the government can never take a portion of a property and leave the rest. The government's ability to take only a limited interest in property has been repeatedly affirmed. *See, e.g., Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) (government must pay for taking of land necessary for a roof top cable).

### 5. Inadequate Compensation

Small Landowners asserts that Ordinance 91–95 undercompensates the present owners for the value of the taken fee simple interests. This claim is unripe because the procedures challenged have never been used. *Southern Pacific v. City of Los Angeles*, 922 F.2d 498, 505–07 (9th Cir.1990) (facial takings challenge alleging denial of just compensation is not ripe unless the plaintiff has sought compensation through the available procedures), *cert. denied*, —— U.S. ——, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991).

### 6. Generalized Claims of Unfairness

Small Landowners makes several generalized claims of unfairness as well.

Small Landowners argues that the City's tax policies forced landowners to develop condominiums which will be taken away by Ordinance 91–95. Even if this seems harsh to the landowners, it is not a basis to invalidate Ordinance 91–95. Tax policy can create social problems that a city may attempt to solve by rational means. Ordinance 91–95 is a rational attempt to solve the ills that the City Council found, whatever their source.

Small Landowners notes that all five of the City Council members who voted for Ordinance 91–95 have interests in leasehold condominiums. This is not a basis to invalidate the statute. If it were, the City Council could never pass any statute dealing with condominiums. Disclosure of their interests allows the public to correct any problem through the political process.

### B. Substantive Due Process (Counts VIII and XV)

█ Counts VIII and XV allege that Ordinance 91–95 violates Small Landowners' substantive due process rights under the Fourteenth Amendment to the United States Constitution and Article I, section 5 of the Hawaii Constitution.

In order to prevail on these claims, Small Landowners must establish that Ordinance 91–95 is "arbitrary and irrational." *Del Monte Dunes v. City of Monterey*, 920 F.2d 1496, 1508 (9th Cir.1990); *State v. Cotton*, 55 Haw. 148, 153, 516 P.2d 715 (1973). As

explained above, Small Landowners does not meet this burden because the ordinance is a rational exercise of legislative power.

### C. *Equal Protection (Counts IX, XVI)*

■ Counts IX and XVI allege that Ordinance 91–95 violates Small Landowners' equal protection rights guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, section 5 of the Hawaii Constitution. Small Landowners argues the ordinance irrationally groups small landowners with owners such as Bishop Estate who own many projects.

Legislative classifications not involving a suspect class must be rationally related to furthering a legitimate state interest. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976); *Estate of Coates v. Pacific Engineering*, 71 Haw. 358, 363, 791 P.2d 1257 (1990). Here, the City Council found that the refusal of both large and small land owners to sell their land created economic problems. Thus, the City Council rationally decided to treat the problem by subjecting both large and small landowners to mandatory conversion. There is no constitutional problem with this approach.

Small Landowners misplaces two other arguments under the equal protection banner. First, it asserts that Ordinance 91–95 violates equal protection because landowners who are forced to sell their properties will have a difficult time avoiding taxes by replacing them with tax free "like kind" properties. This is definitely a disadvantage to those forced to sell, but it is not an equal protection violation.

Second, Small Landowners again asserts the unfairness of forcing land owners into a cotenancy with their former lessees. Again, this does not show the use of an irrational classification, so it is not a violation of the Equal Protection Clause.

In summary, the court holds that Ordinance 91–95 is constitutional under both the federal and state constitutions. Accordingly, the court DENIES Small Landowners' motion for summary judgment, and GRANTS the City's motion for summary judgment on Counts I, VII, VIII, IX, XIV, XV, and XVI of the complaint.

### III. *Compliance with the City Charter (Count XXII)*

The City moves for summary judgment on Count XXII which alleges that Ordinance 91–95 conflicts with procedural requirements of Section 3–110 of the City Charter. Section 3–110 requires that the City Council, prior to taking property under its eminent domain power, shall adopt a resolution declaring the necessity of the taking as well as other information regarding the property.

This issue is not ripe for a facial challenge to the statute. When the City actually condemns property, it will presumably be required to comply with the Charter. That question should be reserved for another day. Accordingly, the court GRANTS the City's motion for summary judgment on Count XXII.

### CONCLUSION

In summary, this case is indistinguishable from *Midkiff,* and the lenient standards set there compel a conclusion that Ordinance 91–95 is a rational and constitutionally permissible exercise of the eminent domain power.

IT IS SO ORDERED.