**Marc David MANSON et al., Plaintiffs-Appellees,**

**v.**

**George C. EDWARDS, Clerk for the City of Detroit, et al., Defendants-Appellants.**

**No. 73–1025.**

United States Court of Appeals, Sixth Circuit.

Argued April 19, 1973.

Decided July 12, 1973.

Robert Reese, Asst. Corp. Counsel, Detroit, Mich., for appellants; Michael M. Glusac, Corp. Counsel, Detroit, Mich., on brief.

Richard A. Soble, Detroit, Mich., for appellees; Goodman, Eden, Millender, Goodman & Bedrosian, Detroit, Mich., on brief.

Before PHILLIPS, Chief Judge, CELEBREZZE, Circuit Judge, and LAMBROS,* District Judge.

PHILLIPS, Chief Judge.

A minimum age of twenty-five years for the office of City Councilman is prescribed by the Charter of the City of Detroit.[1] This suit challenges that restric-

---

* Honorable Thomas D. Lambros, Judge, United States District Court for the Northern District of Ohio, sitting by designation.

1. Title 3, Ch. 1, § 3.

tion as violative of the equal protection clause of the Fourteenth Amendment.

In an opinion published at 345 F.Supp. 719 (E.D.Mich.1972) the District Court found the challenged charter provision to be unconstitutional. The District Judge held that the restriction could not withstand the scrutiny of the equal protection clause, because the City was unable to demonstrate a compelling state interest in its support. The City appeals. We reverse and remand for the reasons hereinafter set forth.

Marc David Manson, a twenty-one year old registered voter, attempted to file as a candidate for the office of Councilman. The City Clerk refused to accept Manson's petition or to place his name on the ballot because he failed to qualify for the minimum age prescribed by the City Charter.

Thereafter this suit was filed by Manson and three registered voters who alleged a desire to vote for him, charging a denial of equal protection.

The threshold question is whether the age restriction should be examined under the traditional rational basis test or whether there are exceptional circumstances in the present case requiring application of the more strict compelling state interest test.

■ The Fourteenth Amendment does not require a state to treat all people identically. State legislation, even though discriminatory, generally will not be held violative of the equal protection clause where it can be shown that the classification bears some rational relationship to a legitimate state objective. *See* Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Robinson v. Board of Regents, 475 F.2d 707 (6th Cir. 1973).

In McDonald v. Board of Elections, 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L. E.2d 739 (1969), Chief Justice Warren wrote:

"The distinctions drawn by a challenged statute must bear some rational relationship to a legitimate state end and will be set aside as violative of the Equal Protection Clause only if based on reasons totally unrelated to the pursuit of that goal. Legislatures are presumed to have acted constitutionally even if source materials normally resorted to for ascertaining their grounds for action are otherwise silent, and their statutory classifications will be set aside only if no grounds can be conceived to justify them."

■ Under certain circumstances a stricter scope of review will be employed, generally referred to as the "compelling state interest" test. *See* Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed. 2d 274 (1972); Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); Green v. McKeon, 468 F.2d 883 (6th Cir. 1972). The stricter standard will only be employed where the classification is inherently "suspect," as for example where the classification is by race, Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), or where the restriction infringes a fundamental right, such as the right to vote, Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969).

■ Differentiations based upon classification by age are not viewed as suspect. *See,* United States v. Duncan, 456 F.2d 1401 (9th Cir. 1972); Smith v. United States, 424 F.2d 267 (9th Cir. 1970); Republican College Council of Pennsylvania v. Winner, 357 F.Supp. 739 (E.D.Pa.1973).

We believe the correct method of analysis for issues of this character is set forth in the recent decision in Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L. Ed.2d 92 (1972). In that case the Court determined that a state law that inhibited potential candidates for office from seeking their party's nomination because neither they nor the voters who supported them could pay a portion of the cost of conducting the primary, so discriminated against those candidates and the voters who wished to support them as to be violative of the equal protection clause. The Court noted that while the

issue was essentially one of candidates' rights:

> "[T]he rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters. Of course, not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review." 405 U.S. at 143, 92 S.Ct. at 856.

In determining whether the effect on voters will be sufficient to mandate the stricter standard in a case essentially involving candidates' rights, the Court noted: "In approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters." 405 U.S. at 143, 92 S.Ct. at 856. After determining that the size of the filing fees would discourage potential candidates, that many candidates would be forced to look to their supporters for assistance, and that the result of this would be to inhibit candidates favored by the less affluent and encourage the candidates supported by the rich, the Court held:

> "Because the Texas filing-fee scheme has a real and appreciable impact on the exercise of the franchise, and because this impact is related to the resources of the voters supporting a particular candidate, we conclude, as in *Harper* [v. Virginia Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966)], that the laws must be 'closely scrutinized' and found reasonably necessary to the accomplishment of legitimate state objectives in order to pass constitutional muster." 405 U.S. at 144, 92 S.Ct. at 856.

■ The Texas statute therefore was held to be invalid because its impact upon voters related to the wealth of candidates. While wealth is not per se suspect, electoral restrictions based upon affluence will be examined with close scrutiny. *Harper, supra.* Since the impact in the instant case does not relate to a suspect classification, we disagree with the District Court and hold that the rational basis test is to be applied here.

The controlling question in this case is whether there is a rational basis for the age restriction set forth in the Detroit charter; that is, whether the minimum age of twenty-five years for Councilman bears a rational relation to a legitimate goal.

The prescribing of minimum ages for public officials is sanctioned by time-honored precedent. The Constitution of the United States fixes a minimum age of thirty-five for the President (Art. 2, § 1, c. 5), thirty for United States Senators (Art. 1, § 3, c. 3), and twenty-five for Representatives (Art. 1, § 2, c. 2).

The Constitutions of three of the four States within the Sixth Circuit prescribe minimum ages for State officers. In Michigan, Kentucky, and Tennessee the minimum age for the office of Governor is thirty. State Senators in Kentucky and Tennessee must be not less than thirty years of age, and in Michigan, twenty-one. In Michigan, Kentucky, and Tennessee members of the House of Representatives must be at least twenty-one years of age. Justices of the Kentucky Court of Appeals and the Supreme Court of Tennessee must be not less than thirty-five years of age.

In an analogous situation, a three judge court recently held that the Illinois twenty-one year age requirement for local school board membership is reasonable. The court specifically rejected the contention that the compelling state interest standard was applicable. Blassman v. Markworth, 359 F.Supp. 1 (N.D.Ill. 1973).

In the present case, however, we do not pass upon the issue of the validity or invalidity of the charter provision under the rational basis test. There is no evidence in the record on this question. The opinion of the District Court expressly states as follows: "Whether, as defendants argue, there is a rational basis for the City Charter age qualifica-

tion is a question this court need not explore." 345 F.Supp. at 724.

The judgment of the District Court is reversed and the case is remanded for further proceedings not inconsistent with this opinion. No costs are taxed. Each party will bear his own costs on this appeal.