**Gus W. ZIELASKO, Plaintiff,**

v.

**The STATE OF OHIO, Defendant.**

**No. C87–2884–A.**

United States District Court,
N.D. Ohio, E.D.

Aug. 18, 1988.

Donald C. Steiner, Tarun L. Heath, Canton, Ohio, for plaintiff.

Ronald E. Stocker & Deborah A. Dawson, Asst. Stark Co. Pros. Attys., Canton, Ohio, Andrew Sutter, Asst. Atty. Gen., Columbus, Ohio, for defendant.

## ORDER

SAM H. BELL, District Judge.

Plaintiff Gus W. Zielasko is a former member of the judiciary of Stark County, Ohio. He and plaintiff Nancy Bowman are registered voters in that county. They filed the complaint in this matter on November 4, 1987, alleging a violation of their civil rights pursuant to 42 U.S.C. § 1983 and seeking a declaration that Article IV, Section 6(C) of the Ohio Constitution is unconstitutional. This provision precludes the election or appointment of any person to a state judicial office who has attained the age of seventy years.

The county defendants, Thomas Carr, Clerk of the Stark County Board of Elections and the Stark County Board of Elections, answered the complaint. *See* Amended Answer filed December 16, 1987. They assert a denial of parts of plaintiffs' complaint plus the following affirmative defenses: failure to state a cause of action upon which relief can be granted; lack of jurisdiction over the subject matter; and lack of jurisdiction over the parties.

The state defendants, the State of Ohio and Sherrod Brown, Ohio Secretary of State, have answered the complaint and have moved to dismiss on November 30, 1987. Based upon leave granted by this court on April 13, 1988, plaintiffs responded in opposition to the motion to dismiss on May 11, 1988. Defendants have since submitted a reply brief and the question before the court is ripe for resolution.

When considering a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is constrained to accept as true the allegations of a complaint. *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983), *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Lee v. Western Reserve Psychiatric Habilitation Center,* 747 F.2d 1062, 1065 (6th Cir.1984). To dismiss the complaint against defendant, the court would have to find it beyond doubt that the plaintiff can prove no set of facts in support of its claim which would justify the relief sought. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Two days after plaintiffs responded to defendants' motion to dismiss, they filed a motion to amend their complaint. The amended complaint does not change the substantive aspects of their original complaint except that it adds certain facts identifying plaintiff Zielasko's party and the judicial office he is seeking; further, it adds a request for declaratory judgment concerning the constitutionality of Article IV, section 6(C) of the Ohio Constitution; and it omits the claims that this provision of Ohio law is an *ex post facto* law and that it violates plaintiff Zielasko's rights guaranteed by the twenty-sixth amendment. The court will grant plaintiffs' motion in fairness to them and with the understanding that defendants' previously filed

motion to dismiss applies with equal force to the substantive claims of the amended complaint. Therefore, inasmuch as there has been no request to amend defendants' brief or motion in light of the requested amendment of the complaint, the motion to dismiss will be considered in light of the amended complaint. Defendants' arguments made in relation to plaintiffs' claims of twenty-six amendment and *ex post facto* law violations, however, are mooted by the omission of these claims in the amended complaint.

The following facts are alleged in the complaint and are taken as true for the purpose of this motion:

1. Plaintiff Zielasko was born on June 15, 1915. Amended Complaint ¶ 2.

2. Plaintiff Zielasko desires to become a Republican candidate for municipal court judge in Canton, Ohio, for the term commencing January 1, 1990. Amended Complaint at ¶ 4, 7.

3. Article IV, section 6(C) of the Ohio Constitution bars any person from being elected or appointed to any judicial office if he is seventy years of age on the day before he would assume that office.

4. Plaintiff Zielasko is qualified and eligible to be a candidate for the judicial office he seeks except for the fact of his age. Amended Complaint at ¶ 4.

5. Plaintiff Zielasko has not taken out petitions or filed as a candidate for the office he seeks because he believes defendants would not accept his filings and because, in his opinion, he would be subject to criminal prosecution upon signing the declaration that he is qualified. Ohio Revised Code §§ 3513.07; 3599.36. Amended Complaint at ¶ 6.

6. Plaintiff Nancy Bowman is a registered voter in Stark County, Ohio, who votes in Republican primaries. Amended Complaint at ¶ 2.

7. Plaintiff Bowman desires to circulate and/or sign a petition to place plaintiff Zielasko's name in nomination for the judicial office he seeks and to thereafter vote for him. Amended Complaint at ¶ 5.

8. Plaintiff Bowman has not circulated such petitions because it is her belief they would not be accepted because of plaintiff Zielasko's age and because she would be subject to criminal prosecution by signing the form declaration. Ohio Revised Code §§ 3513.07, 3599.36. Amended Complaint at ¶ 6.

The state defendants advance different reasons to justify the relief they seek pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). The first basis is that this case amounts merely to a request for an advisory opinion in that no actual case or controversy exists. Plaintiffs clearly have not circulated or submitted nominating petitions. They claim in the complaint, however, that these would be fruitless acts because the defendants would not accept them due to defendant Zielasko's age. Amended Complaint at ¶ 6. Nevertheless, the state defendants assert that the failure to petition for the office renders this case less than an actual controversy ripe for judicial resolution.

Article III of the United States Constitution provides that parties attempting to invoke federal court jurisdiction must allege an actual case or controversy. *O'Shea v. Littleton,* 414 U.S. 488, 493–94, 94 S.Ct. 669, 674–75, 38 L.Ed.2d 674 (1974); *Flast v. Cohen,* 392 U.S. 83, 94–101, 88 S.Ct. 1942, 1949–53, 20 L.Ed.2d 947 (1968). Thus, it is a threshold requirement that a plaintiff allege that he has "sustained or is immediately in danger of sustaining some direct injury." *Massachusetts v. Mellon,* 262 U.S. 447, 448, 43 S.Ct. 597, 598, 67 L.Ed. 1078 (1923). Furthermore, "[t]he injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *O'Shea v. Littleton,* 414 U.S. at 494, 94 S.Ct. at 675 (citation omitted).

"The ripeness doctrine not only depends on the finding of a case and controversy and hence jurisdiction under Article III, but it also requires that the court exercise its discretion to determine if judicial resolution would be desirable under all of the circumstances." *Brown v. Ferro Corp.,* 763 F.2d 798, 801 (6th Cir.1985). In *Pacific Gas & Electric Co. v. Energy Resources Commis-*

*sion,* 461 U.S. 190, 200–01, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983), the Supreme Court pointed out:

> The basic rationale of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements...." In *Abbott Laboratories,* which remains our leading discussion of the doctrine, we indicated that the question of ripeness turns on "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration."

*(quoting, Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)).

In the present case, defendants argue that as no action has been taken to promote Zielasko's candidacy or to secure his position on the ballot, this lawsuit is premature. Plaintiffs respond that they need not risk criminal prosecution to pursue redress of a violation of their constitutional rights.

In *Clements v. Fashing,* 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982), the Supreme Court considered whether plaintiffs who held public office had to resign before seeking higher office as required by Article III, sections 19 and 65 of the Texas constitution in order to allege a "case or controversy" as to the constitutionality of those requirements. The office holders in that case were subject to automatic resignation from their current offices upon announcing their candidacies for another elective office. The Court found that the plaintiffs who claimed that *but for* the provisions they were contesting they would run for office created an actual case or controversy which was neither hypothetical nor abstract. *Id.* at 961–62, 102 S.Ct. at 2842–43.

Plaintiffs in the instant cause contend that they, too, would have circulated petitions and filed for the municipal court position plaintiff Zielasko seeks but for the possibility of criminal prosecution if they sign the declarations contained in those exact documents. It is not, of course, that sanction which they are challenging here as unconstitutional. However, they claim that the "risk" of criminal prosecution to them as well as to the defendants if they accept the documents is of sufficient reality to render their claim an actual controversy which is neither hypothetical nor abstract.

In order to evaluate this contention the declarations the plaintiffs must sign and the relevant Ohio statutes must be reviewed. Section 3513.04 of the Ohio Revised Code requires that a candidate for party nominations file a declaration of candidacy and pay a filing fee to have his name placed on the ballot. Petitions for candidacy signed by electors are to be submitted with the declaration of candidacy as one instrument. O.R.C. § 3413.05. The person asked to sign a petition is thus assured by the candidate's affidavit that the facts there stated are true, *Higgins v. Brown,* 170 Ohio St. 511, 515–16, 166 N.E. 2d 759 (1960) *(citing Marshall v. Sweeney,* 153 Ohio St. 208, 214, 90 N.E.2d 869 (1950)). *See, also,* O.R.C. § 3513.09 (Candidate signature on declaration required before the signatures of electors placed on petition.). Any qualified elector eligible to vote in the primary and a member of the same political party may protest the candidacy of any person filing a declaration of candidacy. O.R.C. § 3513.05. This protest would then be set for hearing before the appropriate election officials in order to determine the validity or invalidity of the protest. *Id.* Their conclusion is final. *Id.*

The form of declaration of candidacy includes an affidavit as to the filer's residence, address, party, that he is a qualified elector in his voting residence and what office and term he is seeking and that he is otherwise qualified. O.R.C. § 3513.07. The declaration is specifically made under the admonition concerning election falsification the criminal penalty for which is printed in bold type on the form. *Id.* The person circulating the petitions is also required to sign a declaration as to the validity of the signatures. *Id.* The persons who sign the petition endorse a statement that the candidate seeking office is "in [their] opinion" qualified. *Id.*

Qualifications for municipal court judges are contained in Ohio Revised Code

§ 1901.06. There is no reference to age in this statute. The age requirement which is challenged in this case is contained in the Ohio constitution and must be considered a "qualification" for office. The declaration of candidacy, however, does not refer to age or date of birth, and only specifically to the qualifications listed in Ohio Revised Code § 1901.06. *See* O.R.C. § 3513.07.

While it is unclear to this court whether the petitions, if signed by the plaintiffs, would be summarily rejected, it is clear that they would be capable of protest. And while the court cannot find cases reported where a person over seventy years has been criminally prosecuted for signing a declaration of candidacy for a judgeship stating that he is qualified, such person is clearly subject to that result. Consequently, as plaintiff Zielasko is subjected to the risk of criminal prosecution for signing the declaration, the harm is not hypothetical or abstract. He need not be subjected to such a burden before exercising his right to challenge the Ohio constitutional provision. *See Regional Rail Reorganization Act Cases*, 419 U.S. 102, 142–45, 95 S.Ct. 335, 357–59, 42 L.Ed.2d 320 (1974). Therefore, the court finds that he has asserted an actual case and controversy. In addition, as the declaration of candidacy must be signed before plaintiff Bowman can sign or circulate petitions, she is precluded from advancing plaintiff Zielasko as a candidate. Accordingly, the court finds that the plaintiffs have standing in this matter and hereby denies defendants' motion to dismiss on this basis.

The second basis asserted for dismissal is based on eleventh amendment immunity. The principal of sovereign immunity stands as a limitation on the power of federal judges bestowed by Article III. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984). It precludes a federal court from entertaining a suit brought by a private party against a state without the state's consent. *Ex parte State of New York*, 256 U.S. 490, 497, 41 S.Ct. 588, 589, 65 L.Ed. 1057 (1921). Likewise, suits against state officials are barred by the eleventh amendment when the state is the real, substantial party in interest. *Ford Motor Co. v. Department of Treasury of Indiana*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). The eleventh amendment does not, in all cases, however, bar suits brought in federal court seeking prospective injunctive relief. *See Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

In this case plaintiffs seek to have a state constitutional provision declared unconstitutional and to enjoin the enforcement of that provision as to them in the future. This type of relief may be awarded and to the extent of these questions only, this suit is not barred by the eleventh amendment.

The state defendants next assert that this cause states neither a claim of equal protection violation under the fourteenth amendment nor a claim of first amendment violation of the right to associate and vote. In the analysis of any equal protection claim, the threshold question is generally whether the age restriction should be tested under the rational basis or compelling state interest standard of review. *Manson v. Edwards*, 482 F.2d 1076, 1077 (6th Cir. 1973). The Supreme Court has explained the two tests and their application to state legislation as follows:

> The Equal Protection Clause allows the States considerable leeway to enact legislation that may appear to affect similarly situated people differently. Legislatures are ordinarily assumed to have acted constitutionally. Under traditional equal protection principles, distinctions need only be drawn in such a manner as to bear some rational relationship to a legitimate state end. Classifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them. See, e.g. *McDonald v. Board of Election Comm'rs*, 394 U.S. 802, 808–809, 22 L.Ed.2d 739, 89 S.Ct. 1404 [1408] (1969); *McGowan v. Maryland*, 366 U.S. 420,

425–426, 6 L.Ed.2d 393, 81 S.Ct. 1101 [1104–1105], 17 Ohio Ops.2d 151 (1961). We have departed from traditional equal protection principles only when the challenged statute places burdens upon "suspect classes" of persons or on a constitutional right that is deemed to be "fundamental." *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 17, 36 L.Ed.2d 16, 93 S.Ct. 1278 [1288] (1973).

Thus, we must first determine whether the provisions challenged in this case deserve "scrutiny" more vigorous than that which the traditional principles would require.

*Clements v. Fashing*, 457 U.S. 957, 962–63, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982).

The defendants advance a series of cases in support of their ascertion that only the traditional rational basis test need by applied to the classification at issue here based on age. *See Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *Malmed v. Thornburgh*, 621 F.2d 565 (3d Cir.1980); *Trafelet v. Thompson*, 594 F.2d 623 (7th Cir.1979), *Rubino v. Ghezzi*, 512 F.2d 431 (2d Cir.), *cert. denied*, 423 U.S. 891, 96 S.Ct. 187, 46 L.Ed.2d 122 (1975), *Manson v. Edwards*, 482 F.2d 1076 (6th Cir.1973). The Supreme Court has, in fact, held that mandatory retirement of policeman at a certain age is not to be given strict scrutiny because the aged are not a "suspect" class and there is no fundamental right to governmental employment. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. at 313, 96 S.Ct. at 2566. The Sixth Circuit Court of Appeals have applied this analysis with the same results to the involuntary retirement of fireman. *Chapman v. City of Detroit*, 808 F.2d 459, 464 (6th Cir.1986). *See, also, Munteanu v. City of Barberton*, 655 F.Supp. 1357 (N.D.Ohio 1987) (Statutory age restriction limiting those who could sit for fire fighters' exam to those under 31 tested under rational basis test.).

Circuits reviewing the question of whether statutory or state constitutional provisions requiring judges to retire at a certain age violate the equal protection clause have held that no greater scrutiny than the traditional rational basis test need be applied. *Malmed v. Thornburgh*, 621 F.2d at 570; *Trafelet v. Thompson*, 594 F.2d at 630–31; *Rubino v. Ghezzi*, 512 F.2d at 433. *See, also, Manson v. Edwards*, 482 F.2d at 1076 (Rational basis test applied to city charter provision requiring candidates to be 25 years old to run.). In addition, the Ohio Supreme Court has reviewed the constitutionality of the provision at issue here and applied the rational basis test. *Keefe v. Eyrich*, 22 Ohio St.3d 164, 253, 489 N.E.2d 259 (1986).

The plaintiffs, however, advance a line of Supreme Court cases concerning questions of access to the ballot in support of their assertion that strict scrutiny should be applied to their equal protection claim. *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983); *Clements v. Fashing*, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982); *Illinois Elections Board v. Socialist Workers Party*, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979); *Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). *See, also, Goldman-Frankie v. Austin*, 727 F.2d 603 (6th Cir.1984) (Strict scrutiny applies to statute providing no access to the ballot for independent candidates.). The Supreme Court has never decided, however, which test is to be applied when a candidate is barred by an age restriction which prevents a voter from electing him and the candidate and voter assert that their equal protection and first amendment rights have thus been violated. This is the issue before this court. The Supreme Court has provided guidance in analyzing this problem, however. In *Clements v. Fashing*, the Court explained the reasoning to be applied as follows:

> Far from recognizing candidacy as a "fundamental right," we have held that the existence of barriers to a candidate's access to the ballot "does not of itself compel close scrutiny." *Bullock v. Car-*

*ter,* 405 U.S. 134, 143, 31 L.Ed.2d 92, 92 S.Ct. 849 [856] (1972). "In approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters." *ibid.* In assessing challenges to state election laws that restrict access to the ballot, this Court has not forumulated a "litmus-paper test for separating those restrictions that are valid from those that are invidious under the Equal Protection Clause." *Storer v. Brown,* 415 U.S. 724, 730, 39 L.Ed.2d 714, 94 S.Ct. 1274 [1279] (1974). Decision in this area of constitutional adjudication is a matter of degree, and involves a consideration of the facts and circumstances behind the law, the interests the State seeks to protect by placing restrictions on candidacy, and the nature of the interests of those who may be burdened by the restrictions. *Ibid; Williams v. Rhodes,* 393 U.S. 23, 30, 21 L.Ed.2d 24, 89 S.Ct. 5 [10] 45 Ohio Ops.2d 236 (1968).

Our ballot access cases, however, do focus on the degree to which the challenged restrictions operate as a mechanism to exclude certain classes of candidates from the electoral process. The inquiry is whether the challenged restriction unfairly or unnecessarily burdens the "availability of political opportunity." *Lubin v. Panish,* 415 U.S. 709, 716, 39 L.Ed.2d 702, 94 S.Ct. 1315 [1320] (1974). This Court has departed from traditional equal protection analysis in recent years in two essentially separate, although similar, lines of ballot access cases.

One line of ballot access cases involves classifications based on wealth....

The second line of ballot access cases involves classification schemes that impose burdens on new or small political parties or independent candidates....

It does not automatically follow, of course, that we must apply traditional equal protection principles in examining § 19 and § 65 merely because these restrictions on candidacy do not fall into the two patterns just described. But this fact does counsel against discarding traditional principles without first examining the nature of the interests that are

affected and the extent of the burden these provisions place on candidacy. See *Bullock v. Carter, supra,* [405 U.S.] at 143, 31 L.Ed.2d 92, 92 S.Ct. 849 [at 856]; *Storer v. Brown, supra,* [415 U.S.] at 730, 39 L.Ed.2d 714, 94 S.Ct. 1274 [at 1279]. Not all ballot access restrictions require "heightened" equal protection scrutiny.

457 U.S. 957, 963–66, 102 S.Ct. 2836, 2843–45, 73 L.Ed.2d 508 (1982). The court found in *Clements* that the Texas provisions requiring candidates to resign from one office before running for another did not in fact require strict scrutiny even though it affected access to the ballot by candidates and voter rights finding it merely an insignificant interference with access to the ballot which need only rest on a rational predicate to survive an equal protection challenge. *Id.* at 968, 102 S.Ct. at 2846.

More recently the Court addressed the issue of whether a state filing deadline burdened the first amendment rights of a candidate and voters in *Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). The Court, however, relied on the same balancing of factors analysis used in its prior equal protection cases dealing with elections. *Id.* at 786–87, n. 7, 103 S.Ct. at 1569 n. 7. While not stating whether a strict scrutiny or a rational basis test was being applied, the Court analyzed the matter by balancing the character of the asserted injury to voters rights with the interests advanced by the State to justify their legislation and the extent of the need to burden voters' rights. *Id.* at 789, 103 S.Ct. at 1570. The candidate precluded by Ohio's early filing deadline in *Anderson* was an independent seeking to run for the office of President. The Court reasoned that the deadline burdened independent candidates and their supporters unequally and that the state's interest in regulating a national election was not as strong as it would be if the election was for a state office. *Id.* at 792–93, 804, 103 S.Ct. at 1571–72, 1578. The Court concluded that the interests advanced by the state did not justify the restriction on the voters' protected liberty interest. *Id.* at 806, 103

S.Ct. at 1579. The Court distinguished *Clements v. Fashing* where the rational basis test was applied as not impacting on first amendment rights as candidates could still run after they resigned from their present offices and thus voters could still vote for them. *Id.* at 788–89 n. 9, 103 S.Ct. at 1570 n. 9.

In 1984, the Sixth Circuit Court of Appeals reviewed a ballot access case brought by a person desiring to run for a state office as an independent and two voters who wished to vote for her. *Goldman-Frankie v. Austin,* 727 F.2d 603 (6th Cir. 1984). The court applied a strict scrutiny analysis consistent with Supreme Court direction when a classification burdens new parties or independent candidates. *See Illinois Elections Board v. Socialist Workers Party,* 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979); *Storer v. Brown,* 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); *American Party of Texas v. White,* 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974); *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968).

The problem this court faces is how to harmonize the clear Supreme Court rulings that age restrictions need be tested only by a rational basis standard with the Supreme Court rulings in the ballot access cases where voters' first amendment rights are intertwined with the equal protection claims. *See Bullock v. Carter,* 405 U.S. at 142–43, 92 S.Ct. at 855 (There is no fundamental right to run for office but rights of voters and candidates cannot be neatly separated.). The circuits deciding the question have treated the issues only on an equal protection basis and consistently applied a rational basis test. *See Malmed v. Thornburgh,* 621 F.2d at 570 (plaintiffs were only judges and included no voters); *Trafelet v. Thompson,* 594 F.2d at 630–32 (applied rational basis to voters' equal protection claim also); *Rubino v. Ghezzi,* 512 F.2d at 433 (distinguished the ballot access cases as the plaintiffs were *sitting* judges who faced mandatory retirement at a certain age and the voters who had already voted for them).

In view of *Anderson v. Celebrezze,* decided after these cases, however, this court finds that when first amendment ballot access rights are intertwined with a candidate's equal protection claim, the matter "cannot be resolved by any litmus-paper test" that will separate valid from invalid restrictions. *Anderson v. Celebrezze,* 460 U.S. at 789, 103 S.Ct. at 1570. The analysis to be applied follows:

[A] court must resolve such a challenge by an analytical process that parallels its work in ordinary litigation. It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

■ The first step then, in reviewing this classification based on age, is to identify the injury it causes the plaintiffs. It is clear that plaintiff Zielasko has no fundamental right to public employment, *Snowden v. Hughes,* 321 U.S. 1, 6–7, 64 S.Ct. 397, 400, 88 L.Ed. 497 (1944), or to run for elective office. *Bullock v. Carter,* 405 U.S. 134, 142–43, 92 S.Ct. 849, 855, 31 L.Ed.2d 92 (1972); *Trafelet v. Thompson,* 594 F.2d at 626. Nor is there some fundamental right to vote for the elderly. *Rubino v. Ghezzi,* 512 F.2d at 433. The injury, if any, can only be to the voters right to associate and vote for plaintiff Zielasko. The court believes that in the context of this case, the first amendment does not stretch so far.

■ The first amendment grants to voters the right to associate to express their views through their candidates and their votes. *Williams v. Rhodes,* 393 U.S. 23, 30–31, 89 S.Ct. 5, 10, 21 L.Ed.2d 24

(1968). However, not all restrictions imposed by a state on a candidate's eligibility impose constitutionally suspect burdens on voters' first amendment rights to associate and choose among candidates. *Anderson v. Celebrezze*, 460 U.S. at 788, 103 S.Ct. at 1569. States have enacted comprehensive election laws which have been recognized as necessary for fair, honest and orderly elections. *Id., quoting Storer v. Brown*, 415 U.S. at 730, 94 S.Ct. at 1279. In general, the state regulations which have been found to offend the first amendment rights of voters in some way affect the actual right to vote, *Dunn v. Blumstein*, 405 U.S. at 330, 92 S.Ct. at 995 (voter durational residence requirement), or the ability of voters to advance their views through candidates who are prevented from running. *Anderson v. Celebrezze*, 460 U.S. at 780, 103 S.Ct. at 1564 (filing deadline which burdened unequally new parties or independent candidates); *Bullock v. Carter*, 405 U.S. at 134, 92 S.Ct. at 849 (filing fee which due to its impact on voter resources impacts on the exercise of the franchise); *Storer v. Brown*, 415 U.S. at 724, 94 S.Ct. at 1274 (regulation of independent candidates); *Illinois Elections Board v. Socialist Workers Party*, 440 U.S. at 173, 99 S.Ct. at 983 (number of signatures required to run for office found to burden new parties).

In this case, the voter plaintiff claims that her right to associate and vote is burdened because she cannot campaign and vote for plaintiff Zielasko. A voter is not, however, guaranteed the right to vote for a specific individual under the first amendment. There is no question in this case that she may support and vote for a candidate from her party for the judgeship plaintiff Zielasko seeks. The first amendment protects her right to associate with others in support of certain political views and access to the ballot only to the extent that she may vote for a candidate professing those views. In other words, it is the availability of political opportunity which is protected and here is not lacking. Thus, as plaintiff is free to support and vote for her party's candidate, her first amendment rights are not impaired.

Absent a violation of any fundamental right belonging to either plaintiff and, inasmuch as age is not a suspect classification, no greater level of inquiry than whether the state had a rational basis for the age restriction need be applied to either plaintiffs' first amendment or equal protection claims. In applying the rational basis test, the burden falls upon the party challenging the state enactment to convince the court that its basis is irrational and not upon the state. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659, *reh. denied*, 450 U.S. 1027, 101 S.Ct. 1735, 68 L.Ed.2d 222 (1981); *Vance v. Bradley*, 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979). If it is evident that the question is at least debatable, the attack must fail. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. at 464, 101 S.Ct. at 724. Furthermore, the court need not determine what particular reasoning was actually used to justify the enactment, *Flemming v. Nestor*, 363 U.S. 603, 612, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960), and may even hypothesize as to any possible legitimate state objectives which are promoted by the enactment. *See Weinberger v. Salfi*, 422 U.S. 749, 780, 95 S.Ct. 2457, 2474, 45 L.Ed.2d 522 (1975).

The Ohio Supreme Court reviewed the age restriction in Article IV, section 6(C) and considered the following reasons advanced in *Malmed v. Thornburgh*, 621 F.2d at 572-73, which would justify mandatory retirement of judges: first, that retirement creates a pool of part-time judges to help ease court congestion while at the same time bringing in younger judges; second, mandatory retirement eliminates the unpleasant task of removing aged and disabled judges; third, prevention of harm by a few senile judges offsets the loss of judges who can perform competently past the mandatory retirement age; and, fourth, the provision conforms to the recommendations of the American Bar Association and other groups. *Keefe v. Eyrich*, 22 Ohio St.3d at 166, 489 N.E.2d 259. The Ohio Supreme Court found that these reasons were not so irrational that they did not

correspond to legitimate state interests. *Id.*

This court also finds that the reasons stated provide a rational basis for the mandatory retirement of judges as provided in section 6(C). There is thus no substantial equal protection or due process question presented, and plaintiffs' claims under the first and fourteenth amendment must be dismissed.

Plaintiffs' complaint also provides for jurisdiction based on 42 U.S.C. § 2000a–6(a). This subchapter of the civil rights enactments prohibits discrimination in public accommodations on the ground of race, color, religion, or national origin. 42 U.S.C. § 2000a. While section 2000a–6(a) is a jurisdictional provision, the plaintiffs have presented no claim of discrimination grounded on any of the categories listed. Consequently, no jurisdiction lies under that section.

In addition, the declaratory judgment plaintiffs seek is in aid of jurisdiction and does not provide an independent basis of jurisdiction. *Schilling v. Rogers,* 363 U.S. 666, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960); *Appling County v. Municipal Electric Authority of Georgia,* 621 F.2d 1301, 1303 (5th Cir.1980); *Hughes–Bechtol, Inv. v. West Virginia Board of Regents,* 527 F.Supp. 1366, 1377 (S.D.Ohio 1981), *aff'd,* 737 F.2d 540 (6th Cir.), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984).

Accordingly, defendants' motion to dismiss is granted and this case is dismissed in its entirety.

IT IS SO ORDERED.